**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | ) |
| | ) Misc. No. 05-19 Erie |
| IN THE MATTER OF RICHARD E. | ) |
| FILIPPI, | ) |
| | ) |
| Petitioner. | ) |

**<u>MEMORANDUM ORDER</u>**

This miscellaneous matter was commenced when Petitioner, Richard E. Filippi,

filed a motion to compel the FBI and United States Attorney's Office to produce certain

materials regarding Gregory J. Rubino, a witness in the state court criminal proceedings

currently pending against Petitioner at <u>Commonwealth v. Filippi, et al.</u>, No. 1724 of

2005, Erie County Court of Common Pleas.  The requested materials generally fall into

two categories, both of which Petitioner believes are discoverable under <u>Brady v.</u>

<u>Maryland</u>, 373 U.S. 83 (1963), *to wit*:  (i) documents within the custody of the FBI such

as 302 reports, 209 reports, informant files and the like, supposedly documenting

Rubino's alleged involvement in criminal activities and/or his alleged role as a

government informant (paid or otherwise) in other criminal investigations; and (ii)

documents within the custody and control of the United States Attorney's Office –

namely, grand jury testimony provided by Rubino or by others purporting to summarize

Rubino's testimony relative to other criminal matters.

In response to the Petitioner's motion, the FBI and United States Attorney's

Office (collectively, the "Government") objected that Petitioner's request for disclosure

of the first category of documents was not ripe for judicial review.  In the Government's

view, Petitioner could obtain the relief requested in this Court only through commencement of a civil action under the standards set forth in the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.*.  The Government further noted that it had already turned over various documents responsive to the Petitioner's request in connection with a state court subpoena duces tecum which Petitioner's counsel had served upon the FBI in connection with Petitioner's state court criminal proceedings. The state court judge presiding over Petitioner's criminal case, the Hon. Ernest J. DiSantis, Jr., has since held an *in camera* review of those documents for the purpose of determining whether they should be produced to Petitioner in connection with his pending state court criminal case.

As to the second category of documents sought by Petitioner (i.e. grand jury materials), the Government conceded that such materials can be sought and produced under appropriate circumstances in accordance with Fed.R.Crim.P. 6(e)(3)(E)(i); however the Government argued that the standards for disclosure under Rule 6 had not been satisfied in this case.  In any event, the Government represented that it had conducted a search for the requested grand jury materials and had determined that such materials either did not exist or were not retrievable.

On August 29, 2005 this Court held argument relative to Petitioner's motion to compel.  The Court permitted Petitioner's counsel (and those others joining in the motion) the opportunity to cross-examine Special Agent Jeffrey Killeen about the efforts and techniques he and others employed in responding to the Petitioner's request for documents relative to the state court subpoena.  Based on the testimony received, this Court indicated it was satisfied that Special Agent Killeen had been thorough in his

search and that any documents arguably falling within the scope of Petitioner's request

for FBI documents had been supplied to Judge DiSantis for *in camera* review.  The

Court noted that there was nothing about Special Agent Killeen's methodology or

approach in conducting his document search that undermined its confidence in the

integrity or results of his search.  This Court therefore denied Petitioner's motion to

compel as moot insofar as it sought to compel production of FBI documents under the

APA.[1]

      Nevertheless, on September 1, 2005, Special Agent Killeen apparently contacted

the chief prosecutor in Petitioner's state court criminal case to advise that he had

conducted an additional search of FBI records and had located additional documents

pertaining to Mr. Rubino that were not among those originally produced to Judge

---

[1] With respect to the grand jury materials sought by Petitioner, this Court indicated its satisfaction, based on the affidavit and in-court representations proffered by the Government, that the materials sought either did not exist in the form requested or had previously been destroyed.  Nevertheless, to the extent the Government's original search did not encompass a review of sealed documents contained in the files of three particular court cases (CR 88-9 Erie, CR 89-4 Erie, and CR 89-12 Erie), we directed the U.S. Attorney's Office to conduct a review of those court documents and, if any were responsive to Petitioner's request, to forward the same to Judge DiSantis within 21 days.  We indicated that, if responsive grand jury materials were located, we would implement the procedures outlined in In re Grand Jury Proceedings (Wright II), 654 F.2d 268 (3d Cir. 1981) and await a ruling from Judge DiSantis as to the relevancy and admissibility of the information in the state criminal proceedings, which would then inform this Court's ruling as to whether the grand jury materials should be disclosed pursuant to Fed.R.Crim.P. 6(e).  Thus, we took Petitioner's motion to compel under advisement with respect to his request for grand jury materials, pending the Government's review of the relevant criminal court files.  The Government duly performed this review and has advised this Court that it found no documents in the nature of grand jury material that were responsive to Petitioner's request.  As Petitioner's present motion for reconsideration does not concern its prior request for grand jury materials, we consider this aspect of Petitioner's motion to compel to be resolved.

DiSantis.  (See Pet.'s Mot. to Reconsider and Reopen the Aug. 29, 2005 Evid. Hrg. [Doc. 15] at Ex. 3.)  Special Agent Killeen reportedly continued to re-search the Agency's records through most of the following week, the net result of which was that some additional documents from the 1980s were discovered that were arguably responsive to Petitioner's state court subpoena.  By letter dated September 9, 2005, the state court prosecutor advised Judge DiSantis of these developments and suggested that Special Agent Killeen would be available to personally deliver the additional documents to the state court for *in camera* inspection and to provide the court a "complete explanation on how this occurred and, why he is now satisfied that the search is complete."  (Id.)  In response to this correspondence, Judge DiSantis wrote the state prosecutor on September 12, 2005 and directed that Special Agent Killeen deliver any additional evidence within five days for the Judge's inspection.  Judge DiSantis further indicated that he was "reserving the option to conduct an evidentiary hearing on this matter in order to establish the FBI's efforts in this regard and to insure that all evidence has been provided to me for the *in camera* inspection."  (See Govt.'s Response to Mot. to Reconsider and Reopen the Aug. 29, 2005 Evid. Hrg. [Doc. 18] at Attachment 2.)

Following these developments, Petitioner filed a Motion to Reconsider and Reopen the August 29, 2005 Evidentiary Hearing [Doc. No. 15].  In relevant part, Petitioner asserts:

> .... none of the material turned over to Judge DiSantis to date includes FBI 209 reports nor does the material include FBI reports, either 302s or 209s, regarding Rubino's current activities concerning the corruption of Councilman [Ian] Murray.  It is the continuation of this corrupt behavior on the part of Rubino from the

80s through the present that is relevant to a fact finder's
assessment of Rubino's bias and motivation for testifying on behalf
of the Commonwealth.

(Pet.'s Mot. to Reconsider at pp. 8-9, ¶¶ 11-12.)

The Government opposes reconsideration or a reopening of the record in this case for two reasons:  first, it continues to object that this Court lacks jurisdiction over this dispute; second, it points out that the state court has assumed jurisdiction over the issues which Petitioner seeks to adjudicate in this Court.

A.

Preliminarily, we must consider the Government's challenge to this Court's jurisdiction over the instant dispute.  The Government contends that the Petitioner can *only* obtain the relief he seeks by filing a civil action – i.e., a complaint – under the APA, which he did not do.  Because of this procedural flaw, the Government insists, the dispute is not ripe for adjudication.

We disagree.  Section 702 of the APA provides a right of judicial review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702. The provision goes on to provide a limited waiver of sovereign immunity:

> An action in a court of the United States seeking relief other than
> money damages and stating a claim that an agency or an officer or
> employee thereof acted or failed to act in an official capacity or
> under color of legal authority shall not be dismissed nor relief
> therein be denied on the ground that it is against the United States
> or that the United States is an indispensable party.

Id.

In United States Environmental Protection Agency v. General Electric Co. ("GE

5

1"), 197 F.3d 592, 599 (2d Cir. 1999), *modified in non-relevant part on reh'g*, United States Environmental Protection Agency v. General Electric Co. ("GE 2") 212 F.3d 689 (2d Cir. 2000), the Second Circuit Court of Appeals concluded that a motion to compel enforcement of a subpoena duces tecum was "an action" against the federal agency within the meaning of § 702.  In that case, General Electric, a defendant in an environmental lawsuit commenced in federal court in New Jersey, served a subpoena duces tecum on the United States EPA (although the EPA was not a party to the underlying New Jersey litigation) because GE believed that the EPA was possessed of information favorable to GE's defense.  The district court  had held that the APA provides the only express waiver of immunity by which GE could seek the desired documents from the federal agency, but it quashed the subpoena on sovereign immunity grounds, concluding that "actions" under § 702 did not encompass "ancillary motions against a non-party commenced ... not by filing an independent lawsuit but simply by moving to compel enforcement of a subpoena."  Grand St. Artists v. General Electric Co., 22 F. Supp. 2d 299, 300 (S.D.N.Y. 1998).  Citing Davis Enters. v. United States Envtl. Protection Agency, 877 F.2d 1181, 1186 (3d Cir. 1986), the Second Circuit Court of Appeals agreed that the EPA action was reviewable under the APA; however, it disagreed with the district court's conclusion that the "action" referred to in § 702 must be "a lawsuit, an independent, self-sufficient, legal proceeding commenced by a plaintiff's filing a complaint."  197 F.3d at 599 (citation omitted).  The court reasoned as follows:

> Section 702 does not say that judicial review of agency actions may
> not be had by means other than independent actions.  Moreover,
> the APA provides, in the section entitled "Form and venue of

6

proceeding" as follows:  "Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."  5 U.S.C. § 703.  A separate action for judicial review to compel compliance with a third-party subpoena addressed to the government during an ongoing litigation would provide neither a prior nor an adequate opportunity for review.  A separate action would not be "prior to" but rather contemporaneous with the ongoing litigation.  Such an action would be inadequate because it would result in time-consuming additional litigation that would either render the resulting discovery moot for the original litigation or unnecessarily delay that action.  As previously noted, a separate action also does not provide the exclusive opportunity for judicial review.

Id.  The court of appeals thus concluded that GE could obtain judicial review of the

EPA's refusal to comply with the subpoena duces tecum via a motion to enforce,

without filing a separate and independent lawsuit.  In taking this approach, the court

wrote, "we recognize the scheme for waiver of sovereign immunity for review of agency

actions provided by the APA, permit the use of subpoenas for discovery to be served

upon the United States as a non-party in accordance with the pertinent rules of

procedure, and promote judicial economy by allowing the underlying litigation to

advance without delay."  Id.  See also In re S.E.C. ex rel. Glotzer, 374 F.3d 184, 190

(2d Cir. 2004) ("*EPA v. GE 1* 's holding that motions to compel agency compliance with

subpoenas are "agency action[s]" reviewable under APA § 702 remains good law.").

Other federal courts have reached conclusions in accordance with EPA v. GE 1.

In Barnett v. Illinois State Bd. of Illinois, No. 02 C 2401, 2002 WL 1560013 at *1 (July 2,

2002), for example, the U.S. District Court for the Northern District of Illinois was faced

with a private litigant's motion to compel production of census information subpoenaed

from the U.S. Department of Commerce.  The court observed that it had to initially

determine whether the plaintiffs had "jumped through the right procedural hoops" in making their request.  Id. The court acknowledged the Seventh Circuit's directive in Edwards v. United States Dep't of Justice, 43 F.3d 312, 316 (7th Cir. 1994) that judicial review of a federal agency's response to a private litigant's subpoena "has to be an [APA] claim directed at the agency."  Id.  In Barnett, the plaintiffs had instead filed a motion to compel discovery.  Nevertheless, the district court found this approach compatible with Edwards:

> The bottom line in this case, no matter how the parties get there, is that the Department's refusal to comply with plaintiffs' subpoena, which was made pursuant to its *Touhy* regulations, is, as *Edwards* instructs, to be reviewed by the court under the standard set forth in the APA, 5 U.S.C. § 706(2)(A). ... And a motion to compel directed against the Department does the job of bringing the APA "action," 5 U.S.C. § 703, before the court equally as well as, if not better than, a separate APA claim against the Department. *See General Electric, 197 F.3d at 599.*

Id. (internal footnote and citation omitted).  Accord Phoenix Insurance Co. v. Phillips, No. Civ. A. 99-1945, 2000 WL 680334 at *1  (E.D. La. May 24, 2000) ("The APA allows the enforcement of a non-party subpoena duces tecum for discovery against the government through a motion to compel compliance.").

We recognize that the Government has cited some authority in support of its view that the only viable means of judicial review under the APA is through the filing of a complaint.  See In re Howard, 325 F.2d 917 (3d Cir. 1963); Warren v. Arzt, 18 F.R.D. 11 (S.D.N.Y. 1955).  However, we find these cases to be of limited value in providing guidance on the precise matter raised herein.  Neither case involves efforts by a private litigant to compel production of material subpoenaed in federal court from a non-party

federal agency.  In re Howard is materially distinguishable from the case at bar because it involved a taxpayer's attempt to initiate federal court proceedings by filing an application to quash an IRS administrative summons and the application named no defendant, stated no basis of jurisdiction, and asked for no judgment against anyone. The applicability and continued viability of Artz, we think, is questionable in light of EPA v. GE 1, discussed above.

Moreover, it cannot be said that the procedural posture of this matter makes Petitioner's requested relief unripe.  On the contrary, the Government acknowledges that its position relative to the production of requested FBI materials is final – *to wit*, it has agreed to produce for Judge DiSantis's *in camera review* all materials that it believes are arguably responsive to the Petitioner's subpoena.  It does not appear that the Government has withheld any responsive documents on the grounds of privilege or any other basis set forth under 28 C.F.R. §16.26.  Instead, the only question before this Court is whether the Government has, as a matter of fact, produced all the responsive documents to the state court judge.  As to this decision, there cannot be any further administrative record development; the matter is as ripe for review as it will ever be. Thus, if we were to dismiss this matter, presumably the Petitioner would then file his civil action under the APA, serve the complaint, and the parties would be in exactly the same posture as they now are.  Under the circumstances, we find the decisions in EPA v. GE 1 and Barnett, *supra*, to be well reasoned and persuasive.  We therefore disagree with the Government's position that jurisdiction is lacking over the instant matter.

B.

Having rejected the Government's jurisdictional challenge, however, this Court nevertheless declines to re-open proceedings on Petitioner's motion to compel.  The Government points out that the FBI has acquiesced to state court jurisdiction for purposes of Petitioner's pending criminal case, and it suggests that principles of *Younger* abstention[2] counsel against our exercising jurisdiction under the APA.  We agree that, given the posture of this case, abstention is warranted.

As our circuit court of appeals has recognized, "[a] federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding.  Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 408 (3d Cir. 2005).  Nevertheless, abstention is to be applied rarely and is appropriate only "in a few carefully defined situations."  Id. (citing Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992)).  *Younger* abstention is appropriate only where three requirements are satisfied:  (1) there is an ongoing state proceeding which is judicial in nature; (2) the state proceeding implicates important state interests, and (3) the state proceeding affords an adequate opportunity to raise the federal claims.  See Yang v. Tsui, 416 F.3d 199, 202 (3d Cir. 2005).  In this case, we conclude that all three factors are present and counsel against reopening these proceedings.

---

[2] See Younger v. Harris, 401 U.S. 37 (1972).

First, Petitioner's criminal proceeding in state court is presently ongoing. That proceeding is clearly judicial in nature, so the first prong of *Younger* analysis is satisfied.

Second, Petitioner's state court proceedings implicate important state interests. Pennsylvania obviously has a strong and legitimate interest in the prosecution of individuals who allegedly violate its laws. See Monaghan v. Deakins, 798 F.2d 632, 643 (3rd Cir. 1986) ("[T]he state's interest in the unhindered enforcement of its criminal laws has been repeatedly recognized by the Supreme Court as a state interest deserving of the greatest deference in cases posing problems under *Younger*.") (citing cases) (Adams, J., concurring in part and dissenting in part), *judgment affirmed in part, vacated in non-relevant part,* 484 U.S. 193 (1988)). That interest is presumably even stronger when the prosecution involves allegations that an elected state or local official has violated the law. At the same time, however, the Commonwealth has an equally strong interest in protecting the integrity of its criminal proceedings and protecting the rights of the accused by ensuring compliance with *Brady's* mandates.

Third, Petitioner has a completely adequate state forum in which to raise the instant claims. Petitioner disputes this conclusion, arguing that his claims against the FBI can be pursued *only* under the APA and *only* in federal district court, since APA claims are matters of federal jurisdiction exclusively. Given the procedural context of this case, however, the Petitioner's argument represents the proverbial "red herring."

Petitioner relies on United States v. Williams, 170 F.3d 431, 434 (4th Cir. 1999), wherein the Fourth Circuit Court of Appeals stated that "review of a claim that the

11

agency's action is inadequate and/or incomplete, pursuant to the APA, expressly limits

such review authority to the federal courts." While we do not quibble with the Fourth

Circuit's jurisprudence in <u>Williams</u>, we conclude that Petitioner's reliance on that

authority in this instance is misplaced. <u>Williams</u> involved a situation, not unlike ours,

wherein the defendant in a Maryland state court criminal proceeding attempted to

obtain FBI files in aid of his defense by serving a state court subpoena on the Bureau.

There the similarity to this case ends, however, because in <u>Williams</u> (unlike our case),

the FBI *resisted* discovery and, when Williams attempted to compel disclosure by

obtaining a show cause order from the state court, the FBI resisted state court

jurisdiction and *removed* the matter to federal court. The district court quashed the

subpoena for lack of jurisdiction and the Fourth Circuit affirmed. Central to the

<u>Williams</u>' court's analysis was its prior ruling in <u>Smith v. Cromer</u>, 159 F.3d 875, 878 (4th

Cir. 1998):

> In *Smith*, we held that an order of a state court seeking to compel a
> federal official to comply with a state court subpoena is "an action
> against the United States, subject to the governmental privilege of
> sovereign immunity." *Smith*, 159 F.3d at 879. Unless such
> immunity is waived, the state court "lacks jurisdiction to proceed
> against a federal employee acting pursuant to agency discretion."
> *Id.* And because "a federal court's jurisdiction upon removal under
> 18 U.S.C. § 1442(a)(1) is derivative of the state court jurisdiction,"
> the federal court can acquire no jurisdiction to enforce a state court
> subpoena or order upon removal. *Id.* ...

170 F.3d at 433.

The lesson derived from <u>Williams</u> is that, when the FBI resists production of

material under a state court subpoena and does not waive its sovereign immunity, then

sovereign immunity precludes the state court from enforcing the subpoena.  As

Williams recognizes, however, sovereign immunity can be waived by the federal

government.  See id. ("Unless such immunity is waived, the state court 'lacks

jurisdiction to proceed against a federal employee...").  Here, the FBI has expressly

submitted to the jurisdiction of the state court and has expressly consented to be bound

by Judge DiSantis's orders relative to the state court subpoena which Petitioner

originally served on the Bureau.  Thus, while the state court may not have jurisdiction

over the FBI *pursuant to the APA*, it has most assuredly acquired jurisdiction over the

FBI pursuant to its own subpoena enforcement powers, to which the FBI has willingly

submitted.

Dissatisfied with this scenario, Petitioner accuses the Government of "forum

shopping contrary to the provisions of the APA simply by representing to this Court that

they will agree to be bound by an Orders entered by the State Court..."  (Pet.'s Reply to

Govt.'s Response in Opp. to Pet.'s Mot. for Reconsideration and to Reopen Evidentiary

Hearing [Doc. 19] at p. 7.)  It is worth noting, however, that Petitioner is the one who

attempted to initiate state court proceedings against the FBI by serving a state court

subpoena upon that agency.  That the FBI agreed to submit to the state court's

jurisdiction rather than attempt to remove the matter and quash the subpoena in federal

court does not bespeak forum shopping on its part.

Petitioner suggests that the Government's submission to state court proceedings

somehow violates the APA which is, as Petitioner notes, a statute over which federal

courts exercise exclusive jurisdiction.  See Smith, 159 F.3d at 881 (APA expressly limits

review authority to federal courts).  Once again, however, the state court is not

purporting to exercise jurisdiction over the FBI pursuant to the APA but rather pursuant

to its own inherent subpoena enforcement powers.  We see no violation of the law in

this regard, in light of the Government's waiver of sovereign immunity.

Nor do we think that the APA's status as an exclusively federal remedy

undermines our finding, for *Younger* purposes, that Petitioner has an adequate

opportunity to raise his present claims in the state court proceedings.  It is important to

recognize that, while Petitioner has brought the instant motion to compel under the

APA, the aim of Petitioner's motion – indeed its very *raison d'etra* – is to obtain

materials that Petitioner believes are discoverable for use in his state court criminal

case under Brady.  The Government has not heretofore resisted such discovery in state

court on the basis of privilege, sovereign immunity, administrative policy, or any other

ground.  On the contrary, to date, the Government has demonstrated a complete

willingness to comply with the state court subpoena served on it, subject only to the

state court's order that any materials produced must first be reviewed by the court *in

camera*.  As to the issue at the heart of this matter – whether the FBI has Brady

material within its possession – the state court is better postured than this Court is to

resolve that query.  Most significantly, the state court, being the forum of the underlying

criminal proceedings against Petitioner, is in a far better position to determine whether a

particular document contains Brady information in the context of that case.  See, e.g.,

Friedland v. City of Charlotte, No. 3:98CV122-MU, 2001 WL 1360436 at *6 (W.D.N.C.

Oct. 26, 2001) ("[W]hat is *Brady* [material] can be determined only in the context of the

indictment and the 'entire record,' ... and there is simply no better place for that determination to be made than the criminal trial court.").

Furthermore, to the extent that Petitioner's dispute with the FBI has devolved into a credibility determination – i.e., whether Special Agent Killeen's representations about his document search were accurate or (as Petitioner suggests) misleading and potentially false – the state court judge is every bit as capable of making this determination as this Court. In fact, the record reflects that Judge DiSantis has specifically contemplated entertaining such a hearing. Should he choose to do so, he will have the benefit of a transcript from the August 29, 2005 hearing before this Court, a written submission from Special Agent outlining the circumstances of the additional document discovery, and the opportunity to observe Special Agent Killeen or any other witnesses first hand.

In opposing the Petitioner's motion to reopen the record, the Government argues that "the State Court is the appropriate forum to determine not only the discoverability of any of the documents being sought, but also any issues pertaining to the 'thoroughness and completeness' of the FBI's record review and response to Petitioner's State court demand." (Gov.'t Response in Opp. to Pet.'s Mot. for Reconsideration and to Reopen Evid. Hrg. (Doc. 18) at 7.) We agree.

In sum, the factors discussed more fully above counsel against reopening the matter in this Court. Accordingly, the following order is entered:

AND NOW, this 19th day of October, for the reasons set forth above, Petitioner's Motion [Doc. No. 15] to Reconsider and to Reopen the August 29, 2005 Evidentiary Hearing is DENIED.

s/     Sean J. McLaughlin
United States District Judge

cm:    All counsel of record.